## Murphy's Appeal

W. P. Geary, for appellant.

Leslie R. Himes, for Secretary of Revenue.

RIMER, P. J., December 15, 1938.—This appeal is from the order of the Secretary of Revenue under date of May 23, 1938, withdrawing motor vehicle privileges of Donald Murphy and a suspension for 90 days. The reason given is "speeding". On May 26, 1938, a supersedeas of this order was allowed upon appeal.

In the oral argument as well as in the briefs presented, counsel for the Secretary of Revenue and for the operator devoted practically the whole of their argument to the question of the sufficiency of the tests for accuracy which was in evidence at this hearing. However, we shall briefly note the facts found from the hearing. On the part of the Secretary of Revenue the evidence of Officer Scheib of the Motor Patrol was offered. He testified that on March 17, 1938, on Route 68, within the County of Clarion and between the boroughs of East Brady and Rimersburg, and at about 9:30 p.m., he followed this operator, who was driving a motor vehicle upon that highway, for about eight miles, timing him over a straightaway for one half mile. During this timing he stated that the operator was traveling at the rate of 60 miles per hour. He further testified that on March 12, 1938, he had the speedometer in the car then used tested for accuracy at the Butler Ignition & Winding Company of Butler, Pa., by one James Armstrong, and that the test showed it to be accurate. Opposed to this we have the testimony of the operator who admitted driving his car over that road that evening, giving the hour at 7:45 o'clock. He stated that he had his sister Sarah and a young woman friend in the car with him, seated in the back seat. The operator testified that there were not many cars on the road but that he had passed three of them without noticing how fast they were going and that on the stretch where the officer said he timed him, he was traveling at the rate of 45 miles per hour. He also testified that he had the speedometer on his car tested at Butler, Pa., offering in evidence the affidavit of John Heyser to the effect that the speedometer on his car tested "fast",

2 miles per hour, indicating 52 miles when it was in fact traveling at 50 miles per hour. This evidence was admitted under objection but could not be considered admissible under the general rules of evidence.

The sister, Sarah Murphy, testified that from the back seat she watched the speedometer almost continuously and that it indicated a speed of 45 miles an hour, never exceeding 50 miles. The other occupant of the car did not testify.

Without reflecting upon the credibility of the operator and his sister, we are faced with the existing conditions as to both. As to the operator, we cannot avoid realizing that, unless there is specific purpose in his mind at the time, the operation of the car must necessarily interfere with the observation of the speedometer. He did not know that he was under the observation of an officer and, therefore, feel the necessity of continuous observation of his speedometer. For another reason, the testimony of one riding in the rear seat of a car calls for considerable allowance. Unless her attention was centered upon the speedometer and the usual position of one in the rear seat considerably altered, ability to observe is hampered to such a degree as to require an explanation both as to how and why such observation was made. We are far from deciding that there was wilful or conscious misstatement on the part of either of these witnesses, but the above conditions do affect the probative value of their statements. It was the officer's duty and his specific purpose at the time to determine the rate of speed by watching the speedometer on his car and we must conclude that the weight of the evidence, in this respect, is with the Secretary of Revenue.

We come now to the strenuously disputed question as to whether or not the law was complied with in requiring that under conditions such as existed here, driving upon one of our highways not within a business or residential district, the vehicle used in timing in this case was

"equipped with a speedometer tested for accuracy" within the required period of 30 days prior to its use.

It is not controverted that such a test was made within that period. However, counsel for the operator argues with considerable force that the test made was not a sufficient one to entitle the readings from this speedometer to stand as evidence. It is urged that the test was made while the speedometer was detached from the vehicle and that, therefore, it was not shown to be accurate when attached and used thereon. Nor was there evidence to show that it was correctly attached and that the adjustment of tires, etc., rendered it correct. Objection was also made that the "Master Testing Machine" said to be used was in fact not proven to be itself accurate.

The existing law in respect to testing the speedometer used by police officers leaves much to be desired. Admitting the powers of the Commonwealth to govern and regulate the use of its highways by motor vehicles and that the operator has no property rights under the license granted by the license such as was suspended in this case, there is great room for improvement in the legislative provisions in respect to this troublesome matter. However, the burden on the court is to "take testimony and examine into the facts of the case, and to determine whether petitioner is subject to suspension of operator's license or learner's permit under the provisions of this act." The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, provides that upon any violation of law this license may be suspended by the Secretary of Revenue and that driving in excess of 50 miles per hour is a violation of the act.

In determining this we may not require the Commonwealth to support its contention by evidence which establishes a violation beyond a reasonable doubt. The proceedings being in the nature of a civil action there is only required a preponderance or fair weight of the evidence.

Here we have testimony of readings of the respective speedometers of the operator and the officer without any

presumption in favor of the accuracy of either one. Doubtless, the legislature intended to meet such a condition by the provision of the test for accuracy and we have to decide whether the test in this case was sufficient.

James L. Armstrong, an employe of the firm where the speedometer used by the officer was tested on March 12, 1938, states that the duties of his employment were to repair, amongst other things, speedometers, and that in his employment he has been occupied for about two years in testing the accuracy of speedometers. His experience, he stated, was gained in testing from 25 to 100 speedometers each month. He described the apparatus used as consisting of two speedometers, motor driven, one of them for automobile speedometers and the other for motorcycles, set up together. The cable of the speedometer to be tested is disconnected from the car and the cable from this apparatus connected therewith. He states that this is the usual method of testing the accuracy of speedometers and that no other is known to him. The apparatus itself is made by the North East Electric Company of Buffalo or Rochester, New York, and is called a "Speedometer Tester". Finally, the witness states that as a result of the test thus used he found the speedometer in question pretty accurate, the test having been made at 40, 50, and 60 miles per hour. We are impelled to find that the test thus made is a sufficient compliance with the provisions of The Vehicle Code, supra, to permit readings from such speedometer to be offered in evidence. That being so, the weight of the evidence is with the Secretary of Revenue and the following order will be made.

### Order and decree

And now, December 15, 1938, the order of the Secretary of Revenue, dated May 23, 1938, withdrawing motor vehicle privileges of Donald Murphy, operator, and suspending his operator's license for a period of 90 days, is affirmed, with allowance to appellant for the period

elapsing between the date of said order and the supersedeas allowed on May 26, 1938. The appeal is dismissed at the costs of appellant.